IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Berkeley Charter Education Association Inc. | ) | Civil Action No. 2:25-cv-01341-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **AMENDED COMPLAINT** |
| | ) | |
| | ) | |
| Red Apple Development, LLC; Red Apple at Liberty, LLC; Red Apple at Berkeley, LLC | ) ) ) | |
| Defendants. | | |

Plaintiff, Berkeley Charter Education Association, Inc. ("BCEA"), complaining of Defendants, Red Apple Development, LLC ("Red Apple"), Red Apple at Liberty, LLC ("RAL"), and Red Apple at Berkeley, LLC ("RAB", collectively "Defendants") and amending its previously filed Complaint, with leave to amend or as a matter of course pursuant to Rule 15(a)(1)(B), FRCP, would respectfully allege and show unto the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      BCEA is a non-profit organization incorporated under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina and doing business in Berkeley County, South Carolina.

2.      Red Apple is a limited liability company incorporated under the laws of the State of Florida and doing business in Berkeley County, South Carolina.

3.      RAL is a limited liability company incorporated under the laws of the State of Florida and doing business in Berkeley County, South Carolina.

4.      RAB is a limited liability company incorporated under the laws of the State of Florida and doing business in Berkeley County, South Carolina.

1

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

7. BCEA operates charter schools, Mevers School of Excellence ("Mevers") and Berkeley Preparatory Academy ("BPA" collectively with Mevers the "Schools"), in Berkeley County, South Carolina.

8. Red Apple engages in the acquisition, design, development, and construction of charter school facilities throughout the United States. Red Apple also coordinates with charter school operators to engage them with management companies, typically entities that share common ownership with Red Apple Development, LLC, that oversee the management of charter schools.

9. Upon information and belief, RAB and RAL are subsidiaries and alter egos of Red Apple. For each school that it develops, Red Apple typically forms a separate limited liability company that functions as a holding company for the real estate and/or improvements upon which the school sits. Upon information and belief, Red Apple exercises total dominion and control over RAB and RAL, RAB and RAL have no separate corporate forms from Red Apple (such as a separate board of directors or personnel) and RAB and RAL have no separate corporate interests from Red Apple. Accordingly, to treat RAB and RAL as separate corporate entities from Red Apple would result in unfair and inequitable consequences. Defendants are referred to throughout this complaint collectively as "Red Apple" or Defendants, except where the specific entity is relevant.

10. In 2016 and 2020, BCEA engaged one or more of each of the Defendants to develop, design, and finance facilities for the Schools to be located in Berkeley County, South Carolina. For both BPA and Mevers, BCEA and the Defendants executed two (2) separate agreements: a development agreement and an interim lease agreement, some of which contained later-executed addendums.[1] These agreements contain slight differences, but result in the same relief for each of the Schools for the purposes of this Complaint.

## DEVELOPMENT OF MEVERS FOR A GUARANTEED COST

11. Effective December 22nd, 2016, BCEA and Red Apple entered into the Development Agreement for the School that would come to be known as "Mevers School of Excellence" ("Mevers"), a true and accurate copy of which is attached to this Complaint as **Exhibit A**, and is hereinafter referred to as the "Mevers Development Agreement." Red Apple would earn a fee of five percent (5%) of the development costs of the construction for Mevers, not to exceed $750,000. Ex. A, § 4.

12. Under this agreement, Red Apple promised to acquire the location for the Mevers facilities and construct the Mevers school facilities. Ex. A, §§ 3.1 & 3.2. It was required to lease back the completed facilities to BCEA immediately pursuant to the terms of an Interim Lease that was itself an exhibit to the Mevers Development Agreement, an exhibit which was in fact executed by the parties upon completion of the Mevers school facilities. A true and accurate copy of the Mevers lease is attached hereto as **Exhibit B**, and is hereinafter referred to as the "Mevers Interim Lease."

---

[1] Each of the agreements are exhibited to this Complaint as Exhibits A-E, and are collectively referenced herein as the "Agreements."

13. Under the Mevers Development Agreement, Red Apple guaranteed BCEA that the cost (to BCEA) of the school would not exceed **$15,015,790**, and that Red Apple would then Lease the facility to BCEA on such terms that BCEA would not incur rent calculated on costs that exceeded this number. The relevant provision of the Mevers Development Agreement states:

> Red Apple shall [construct] the Charter School facility…at a cost basis that is guaranteed not to exceed $15,015,790, Red Apple will indemnify and hold harmless BCEA from paying costs or (incurring rent calculated on costs) that exceed $15,015,790[.]

Ex. A, § 3.4.

14. Beyond its obligation to deliver a complete school facility at a cost basis of $15,015,790, Red Apple promised that upon the closing of any loan or financing of the cost of the improvements, it would recalculate the rent in a new "Replacement Lease," and charge BCEA rent that could not exceed the debt service on said loan. The relevant provision of the Mevers Interim Lease provides:

> Notwithstanding anything herein to the contrary, upon the closing of a loan the proceeds of which are used to finance or refinance…the acquisition of and/or improvements at the Premises (the 'Financing'), the parties agree to terminate this Lease and execute and deliver a long-term Lease Agreement or long-term Ground Lease for the Premises (the 'Replacement Lease'), which Replacement Lease shall provide for… an annual Base Rent in an amount equal to the lesser of (i) the Base Rent [as defined in the Interim Lease] in effect at the time of termination, or (ii) <u>the debt service</u> for such Financing.

Ex. B, Art. 1 § 1 (emphasis added)

15. The Mevers Development Agreement and the Mevers Interim Lease cross-reference each other as it relates to this obligation to charge rent based on the debt service for the cost of the improvements. The Mevers Development Agreement refers directly to the preceding provision of the Mevers Interim Lease, stating:

4

> Red Apple warrants that the Base Rent set forth in the Exhibit B of the Lease will not increase, and that the modified rent <u>as calculated in Article I, Section I(ii)</u> [of the Mevers Interim Lease] will not exceed the debt service that would be calculated by amortizing the $15,015,790 at prevailing financial terms.

Ex. A, § 3.4 (emphasis added).

16. In essence, the Mevers Development Agreement and Mevers Interim Lease obligate Red Apple do to two things: (1) to construct the Mevers Facilities for an amount guaranteed not to exceed $15,015,790; and (2) to "indemnify and hold harmless" BCEA from incurring rent <u>based</u> on costs in excess of $15,015,790. As described below, Red Apple further agreed, by contract to proceed in good faith, and use "best efforts" to deliver on that promise on an agreed-upon timetable, which Red Apple has failed and refused to do in breach of the applicable Agreements.

## ADDENDUM TO THE MEVERS INTERIM LEASE

17. BCEA continued to urge Red Apple to obtain debt financing for the Mevers Facilities and thereby lower the rents charged to BCEA. In early 2018, Red Apple approached BCEA and informed BCEA of its desire to obtain bank financing for Mevers without triggering Red Apple's obligations to execute a Replacement Lease that charged a rent that was equal to the debt service obligations for the financing. The immediate recalculation of lower rents would have been triggered by a financial closing in 2018, and Red Apple sought BCEA's forbearance on that issue under the contract documents. The parties contemplated a single tax-exempt bond issued after the anticipated construction of the second school, BPA.

18. In exchange for BCEA allowing Red Apple to secure financing for Mevers without lowering the rent it was being charged, Red Apple promised to act in good faith to secure bond financing that would result in the execution of a "Replacement Lease" by 2020. In reliance on the promises of Red Apple to proceed in good faith to refinance the Mevers facilities and execute the

5

Replacement Lease, BCEA bargained for a specific timetable of 2020. It was anticipated that the second school, BPA, would also be part of the refinancing in an efficient transaction. Should financing not occur in 2020, Red Apple was to act in good faith to pursue such financing in every year thereafter.

19.     The parties memorialized this agreement in an "Addendum to Interim Lease Agreement" executed on February 8, 2018 (hereinafter "Mevers Interim Lease Addendum"). A true and accurate copy of the Mevers Interim Lease Addendum is attached hereto as **Exhibit C**.

20.     Red Apple then subsequently failed to obtain such financing, nor did Red Apple act in good faith to attempt to do so. As described hereinafter, Red Apple has not acted in good faith, as it contractually promised to do, and has never proposed a transaction which would comply with the obligations of the Mevers Development Agreement, and refused to reasonable cooperate, or in some cases respond, to BCEA's attempts to bring about a transaction.

## DEVELOPMENT OF BPA FOR A GUARANTEED COST

21.     The parties proceeded to work together to build the second school. Effective October 5th, 2020, BCEA and Red Apple entered into a second Development Agreement for the School that would come to be known as "Berkeley Preparatory Academy" ("BPA"), a true and accurate copy of which is attached to this Complaint as **Exhibit D,** and is hereinafter referred to as the "BPA Development Agreement." Red Apple would earn a fee of five percent (5%) of the development costs of the construction of BPA, not to exceed $661,603. Ex. D, § 4.

22.     Similar to the Mevers Development Agreement, under the BPA Development Agreement, Red Apple promised to construct the BPA school facilities.[2] Ex. D, § 3.4. It was also required to lease the completed facilities to BCEA immediately pursuant to the terms of an Interim

---

[2] BCEA already owned the site for the BPA facility. Ex. D., § 3.1.

Lease that was itself an exhibit to the BPA Development Agreement, and which was in fact executed by the parties upon completion of the BPA school facilities. A true and accurate copy of the BPA lease is attached hereto as **Exhibit E,** and hereinafter referred to as the "BPA Interim Lease."

23. Under the BPA Development Agreement, Red Apple guaranteed BCEA that the cost (to BCEA) of the school would not exceed **$13,453,231**, and that Red Apple would lease the facility to BCEA on such terms that BCEA would not incur rent calculated on costs that exceeded this number. The relevant provision of the BPA Development Agreement states "Red Apple shall [construct]… the Project… at a cost basis that is guaranteed not to exceed $13,453,231 ("Cost Basis"). Ex. D, § 3.4.

24. Beyond its obligations to deliver a complete school facility at a cost basis of $13,453,231, and like its arrangement for Mevers, Red Apple promised that upon the closing of any loan or financing of the cost of the improvements, it would recalculate the rent in a new "Replacement Lease," and charge BCEA rent that could not exceed the debt service on said loan. The relevant provision of the BPA Interim Lease provides:

> Notwithstanding anything herein to the contrary, upon the closing of a loan the proceeds of which are used to finance or refinance…the acquisition of and/or improvements at the Premises (the 'Financing'), the parties agree to terminate this Lease and execute and deliver a long-term Lease Agreement for the Premises (the 'Replacement Lease'), which Replacement Lease shall provide for…an annual Base Rent in an amount equal to the lesser of (i) the Base Rent (as defined herein) in effect at the time of termination or (ii) <u>the debt service</u> for such Financing.

Ex. E, Art.1 § 2.

25. Reinforcing the above-recited promise in the BPA Interim Lease, the BPA Development Agreement also promised BCEA that Red Apple would use its best efforts and cooperate with BCEA to timely obtain "Permanent Financing", stating:

7

> Provided it is financially feasible, within eighteen (18) months, [Red Apple] and BCEA will use their best efforts to cooperate in obtaining Permanent Financing for the Project and Property. Such financing may include [the Mevers Facilities]. It is anticipated that the existing Interim Lease and Mevers lease obligations would be reduced with Permanent Financing.

Ex. D, § 3.6.

26. In essence, the BPA Development Agreement and BPA Interim Lease obligate Red Apple to do two things: (1) to construct the BPA Facilities for an amount not to exceed $13,453,231; and (2) to use best efforts and cooperate with BCEA to obtain financing within eighteen (18) months of that $13,453,231 and ultimately rent the BPA Facilities to BCEA at an amount not to exceed the debt service on $13,453,231. At all relevant times, it was financially feasible for Red Apple to successfully obtain the "Permanent Financing" described above. As described hereinafter, Red Apple has not acted in good faith, as it contractually promised to do, and has not used its best efforts execute the Replacement Lease, and has never proposed a transaction which would comply with the obligations of the Mevers Development Agreement, and refused to reasonable cooperate, or in some cases respond, to BCEA's attempts to bring about a transaction.

## RED APPLE FAILS AND REFUSES TO PERFORM

27. It has now been five (5) years since the agreed-upon goal of 2020 to accomplish a refinancing, and since the "best efforts" that Defendants agreed to were supposed to be employed, but Defendants have made no efforts that would be in compliance with the amounts set forth in the Agreements. The BPA Facilities were completed and operational by August of 2021. Red Apple had promised to use "best efforts" to obtain "Permanent Financing" within eighteen (18) months, but did not diligently proceed on its promise. BCEA has repeatedly urged Defendants to honor their agreements, and bring about a transaction whereby the two Interim Leases are replaced

8

by a financing transaction. Defendants have failed and refused, and have openly repudiated their obligations under the Agreements. and have continued to charge Base Rent at the annually escalating rates in the Interim Leases. BCEA has given written notice, insisting that Defendants honor the Agreements, and Defendants have taken the position, both in oral conversations, and in writing, that they are not obligated to take any steps or make any effort.

28. Defendants have made one proposal to refinance the facilities and provide for recalculated rents under the respective Replacement Leases, which was not compliant with the promises in the Agreements. Defendants have refused to consider or take up the agreed-upon methodology set forth in the Agreements, and have insisted on terms that breach the Agreements. Defendants have openly repudiated their obligation to follow the methodology set forth in the Agreements.

29. Red Apple's one proposal was not in compliance with the Agreements. Instead, Red Apple's position would have required BCEA and its Board to pay, in financial effect, millions of dollars above the cost of improvements. This sole proposal is not evidence of Red Apple's best efforts and cooperation with BCEA, but was a bad faith, unlawful business tactic designed to ensure that Red Apple continued to receive the lucrative, escalated rent contained in the Interim Leases. Red Apple has not made a single proposal that would comply with the Agreements, and has not reasonably cooperated with BCEA's attempts to mitigate its damages through offers to purchase the facilities.

30. In mitigation of its damages, BCEA, through its Board, has offered to purchase the Schools from Defendants numerous times, but each attempt at a transaction has not resulted in a deal. Upon information and belief, Defendants have purposely delayed and obfuscated, receiving excessive rents in an attempt to outlast the Board, and in disregard of BCEA's contractual rights.

BCEA's good faith offers to carry out the Agreements have been met with evasion and refusal from Defendants, as Defendants have demonstrated that their primary concern is to maintain control by Red Apple's affiliated management entity over the Schools rather than to comply with their obligations under the Agreements. In so doing, Defendants have deprived BCEA of the benefit of its bargain under the Agreements. Rather than honoring their promise of "prevailing market terms," Defendants have refused to consider any avenue of financing other than their exclusive partner, Hamlin Capital Advisors, LLC. Hamlin and Defendants have insisted on oppressive, non-market terms designed to keep Red Apple's commonly-owned management company (Charter Schools USA) as the management company for the Schools for the duration of a 30-year tax-exempt bond issue. As recently as August of 2024, BCEA has brought underwriters and financing to Red Apple that would accomplish the financing of a straight purchase of the facilities, on pricing terms that were supposedly agreeable to Red Apple, only to receive a non-communicative "walk away" from Red Apple, in breach of the Agreements, in breach of good faith, and in breach of using "best efforts" to bring about a transaction.

31. For conduct during the relevant timeframe of BCEA's attempts in good faith to bring about a transaction with Defendants, the U.S. Securities and Exchange Commission has sanctioned Hamlin Capital Advisors for, among other things:

- Failing to timely disclose conflicts of interest based upon an affiliate of Hamlin Capital Advisors purchasing "either all or a substantial portion of the offered bonds."

- Failing to timely disclose conflicts of interest based upon an affiliate of Hamlin Capital Advisors acting as a "compensated bondholder representative."

- Failing to ultimately disclose the correct relationship between Hamlin Capital Advisors and its affiliate because "it only disclosed that the firms had certain common ownership and both firms could 'receive fees.'"

Source: Website of the U.S. Securities and Exchange Commission, Administrative Proceeding File No. 3-22274, found at https://www.sec.gov/enforcement-litigation/administrative-proceedings/34-101424-s.

## DAMAGES TO BCEA

32. Defendants' conduct has caused, and continues to cause, substantial and extraordinary damages to BCEA. Through the wrongful continuation of both Interim Leases, Defendants have charged excessive rents, rents that would have been much lower but for the failure of Defendants to fulfill their obligations. The rents that would be calculated based on the debt service on the cost of the improvements are much lower than the rents Red Apple has charged BCEA, and Red Apple is contractually obligated to enter into a Replacement Lease that is based on the lesser of the status quo and such debt service. BCEA's damages are ongoing, and will be subject to calculation at trial.

33. Based on upon the duration of the Mevers Interim Lease, BCEA is entitled to compensation in excess of **$26,000,000** in order to place BCEA in the same position it should have been, but for the failure of Red Apple and RAL.

34. Based on upon the duration of the BPA Interim Lease, BCEA is entitled to compensation in excess of **$14,000,000** in order to place BCEA in the same position it should have been, but for the failure of Red Apple and RAB.

## FOR A FIRST CAUSE OF ACTION
**(Breach of Contract as to all Defendants)**

35. BCEA incorporates all previous allegations as if restated verbatim herein.

36. The Development Agreements, the Addendums thereto, and the Interim Lease Agreements are valid, enforceable contracts between BCEA and Defendants. At all relevant times, it was financially feasible for BCEA and Defendants to cooperate and accomplish a financing transaction that would have resulted in a Replacement Lease for both Schools with lower rents. The proximate cause of the current state of affairs is Defendants' willful refusal to acknowledge, comply with, and act in accordance with the Agreements they signed

37. Over a period of five (5) years, Defendants have breached the Development Agreements and Interim Lease Agreements by, including but not limited to:

　　a. Failing to take any action to even attempt to bring about a transaction that would comply with the methodology set forth in the Agreements; and

　　b. Failing to pursue permanent financing in a timely manner;

　　c. Charging rent in excess of the agreed upon Base Rent and Cost Basis for a period of time beyond that which would have resulted had Defendants complied with their Agreements, acted in good faith, or used best efforts;

　　d. Failing to use best efforts, cooperate with BCEA, and act in good faith to bring about the favorable financial terms which BCEA bargained for pursuant to § 3.6 of the BPA Lease and § 2 of the Mevers Lease Addendum.

　　e. Failing to deliver the Schools to BCEA and its Board on the favorable financial terms the Board bargained for; and

　　f. In other particulars to be shown at trial.

38. BCEA has provided specific notice to Defendants, urging them to honor the Agreements and respond to its proposals, make proposals, or otherwise proceed. BCEA has exhausted all efforts to bring about cooperation, good faith effort, or any effort from Defendants.

BCEA has participated in a mediation held in Charleston, South Carolina in November of 2024 to no avail. Defendants have halted any activity or communication, or any conduct that could reasonably be construed as effort, much less "best efforts" or good faith. But for Defendants actions and failures to act, a refinancing transaction could have occurred which, when accomplished in compliance with the methodology set forth in the Development Agreements and the Interim Leases, would have resulted in lower rents charged to BCEA for many years to come.

39. The foregoing actions of all Defendants constitute breach(es) of the implied covenant of good faith and fair dealing, which exists in every contract in South Carolina.

40. BCEA has suffered damages as a result of Defendants' breach, including but not limited to, the payment of excess rental charges, which are a direct result of Defendants' failure to adhere to the obligations of § 3.6 of the BPA Lease and § 2 of the Mevers Lease Addendum, along with incidental and consequential damages to be proven at trial.

**FOR A SECOND CAUSE OF ACTION**
**(Specific Performance as to all Defendants)**

41. BCEA incorporates all previous allegations as if restated verbatim herein.

42. The Agreements obligated Defendants to either use best efforts, cooperate with BCEA, and act in good faith to refinance and lower the rents charged to BCEA, comprising the Schools' facilities to the BCEA Board.

43. Defendants have done neither, and have thereby deprived BCEA of its interest in a valid contract for the sale of real property.

44. The Agreements were binding and enforceable as to BCEA and Defendants.

45. BCEA carried into execution its obligations under the Agreements.

46. BCEA has performed, or has been and remains able and willing to perform, its obligations under the Agreements.

47. The Agreements were fair and entered into openly by both BCEA and Defendants.

48. Due to Defendants' refusal to perform their obligations under the Agreements, BCEA has been deprived of its interest in a valid contract for the sale of real property, causing BCEA to suffer damages for which no adequate remedy at law exists.

49. As such, BCEA is entitled to specific performance of the Agreements, including an Order requiring Red Apple to fulfill its obligation(s) under the Agreements to refinance or in the alternative, an Order requiring the sale of the buildings comprising the Schools' facilities at the agreed upon Cost Basis, respectively.

## FOR A THIRD CAUSE OF ACTION
**(Violation of South Carolina Unfair Trade Practices Act as to Defendant Red Apple)**

50. BCEA incorporates all previous allegations as if restated verbatim herein.

51. Defendant Red Apple, by securing financing for the Schools and not renegotiating the Interim Lease Agreements, and failing to proceed in good faith upon its promises, engaging in deceptive negotiation tactics intended to deprive BCEA of its rights under the Agreements and bring about control of the Schools by Charter Schools USA, has engaged in unfair and deceptive conduct in trade or commerce.

52. Defendant Red Apple's deceptive tactics in misrepresenting the status of the refinancing of the Schools was an act separate and distinct from its breaches of contract, as this deception occurred upon Red Apple pretending to cooperate with BCEA, pretending to act in good faith, and pretending to use best efforts to secure refinancing for the Schools.

53. Red Apple's above-described deceptive acts affect the public interest, as Red Apple is the developer of multiple charter schools in South Carolina and is capable of repeating these acts, and is likely to repeat these acts.

54. BCEA has suffered damages as a result of Red Apple's unfair and deceptive conduct, including but not limited to being deprived of its property interests in the Schools themselves, a damage separate and distinct from the damages arising out of Red Apple's breaches of contract.

55. Red Apple's use of unfair and deceptive practices was willful, such that BCEA is entitled to award of three times its actual damages pursuant to S.C. Code 39-5-140(a).

56. BCEA is entitled to an award of its attorneys' fees and costs pursuant to S.C. Code 39-5-140.

WHEREFORE, having fully set forth the causes of action against Defendants, Plaintiff BCEA demands:

a) judgment against the Defendants for an award of actual and consequential damages in an amount to be shown at trial;

b) specific performance of the Agreements;

c) treble damages in an amount to be determined by the trier of fact;

d) attorneys' fees and costs associated with prosecuting this action;

e) pre-judgment interest;

f) and for such other and further relief this Court deems just and proper.

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

By: *s/J.W. Matthews*
Wm. Howell Morrison (FED ID 8406)
134 Meeting Street, Third Floor
Charleston, South Carolina 29401
(843)-722-3366
hmorrison@hsblawfirm.com

                                J.W. Matthews III (FED ID 7699)
                                Christopher B. Major (FED ID 9382)
                                William D. Smith (FED ID 14014)
                                ONE North Main Street, 2nd Floor (29601)
                                P.O. Box 2048
                                Greenville, SC 29602
                                (864)240-3200 (p)
                                jmatthews@hsblawfirm.com
                                cmajor@hsblawfirm.com
                                wsmith@hsblawfirm.com

                                ***Attorneys for Plaintiff Berkeley Charter Education Association, Inc.***

May 28, 2025
Greenville, South Carolina