IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BERKELEY CHARTER EDUCATION ASSOCIATION, INC.<br><br>Plaintiff,<br><br>vs.<br><br>RED APPLE DEVELOPMENT, LLC, RED APPLE AT LIBERTY, LLC, and RED APPLE AT BERKELEY, LLC<br><br>Defendants. | Civil Action No.: 25-cv-01341-BHH<br><br><u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u> |

Defendants Red Apple Development, LLC ("Red Apple") Red Apple at Liberty, LLC ("RAL"), Red Apple at Berkeley, LLC ("RAB") (together "Defendants") submit this Reply in support of their Motion to Dismiss the Amended Complaint filed by Plaintiff, Berkeley Charter Educational Association, Inc. ("BCEA").

## **SUMMARY**

As set forth in Defendants' initial motion, BCEA has not alleged a viable claim for breach of contract, specific performance, or violation of the South Carolina Unfair Trade Practice Act ("UTPA"). Instead, its contractual claims read provisions into the underlying agreements that simply are not there. That is perhaps by design. BCEA's central allegation is that Defendants failed to obtain permanent financing for the projects, and thus violated provisions in which they promised to use their "best efforts" to seek out potential financing. But, as BCEA quietly acknowledges, Defendants did secure proposals for Replacement Financing[1] that would have

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in Defendants' initial Motion.

caused rent reductions under the terms of the Leases. (*See* Amend. Compl. [Doc. No. 24] ¶¶ 28).[2] BCEA, however, refused to accept those proposals for reasons it fails to disclose. Accordingly, BCEA must show the Defendants not only agreed to seek financing, but that they somehow guaranteed a lender would extend financing on terms BCEA found acceptable. This is why BCEA relies on its own gloss of the agreements, rather than the contractual language. The agreements do not go that far.

BCEA cannot plead around the binding terms of the agreements it signed in such a manner. BCEA has not alleged any facts to show that Defendants breached any provision actually found in the underlying agreements and therefore fails to state a claim for breach of contract and specific performance. It further cannot show a violation of the UTPA, either, in part because its claim rests on the same conduct as its claims for breach of contract. As a result, BCEA's claims all fail as a matter of law, and the Amended Complaint should be dismissed, with prejudice.

I.    **BCEA HAS FAILED TO ALLEGE A BREACH OF CONTRACT.**

BCEA has not alleged that Defendants breached any provision actually found in the parties' agreements. Although it attached each of the relevant contracts to the Amended Complaint, BCEA does not actually quote them in its response. Instead, it cites its own allegations purporting to summarize agreements, rather than actual contractual language itself, to argue it has stated a claim. That is not enough to survive a motion to dismiss.

As the agreements show, Defendants only promised they would seek to obtain replacement financing—either in "good faith" or using their "best efforts." Defendants never guaranteed a

---

[2]    In fact, Defendants have brought BCEA numerous proposals for permanent financing, but BCEA has rejected them and carefully avoids alleging any facts about those proposals in its Amended Complaint.

lender would provide financing by a certain time, that a lender would offer financing on terms BCEA found acceptable, or that the resulting loan would lead to a reduction in rent.

The language of the agreements bears this out. Section 2 of the Mevers Addendum (which amended the Mevers Interim Lease), provides as follows:

> 2.    Landlord *will in good faith <u>seek</u> to obtain* tax exempt bond financing for the Premises at the earliest possible time, taking into account the operating history and revenue of the Mevers School. Landlord *shall in good faith attempt* to bring about such tax [exempt] bond financing in 2020 and, if unsuccessful at that time, *then continue to pursue* such bond financing in every year thereafter.

(*See* Am. Compl. Ex. C, § 2 (emphasis added)). Similarly, Section 3.6 of the Berkeley Development Agreement provides:

> 3.6    <u>Permanent Financing</u>.  *Provided it is financially feasible*, [RAL] <u>*and* BCEA *will use their best efforts to cooperate*</u> in obtaining Permanent Financing for the Project and Property.  Such financing *may* include Mevers School of Excellence.  *It is anticipated* that the existing [Berkely] Interim Lease and Mevers lease obligations will be reduced with permanent financing.

(*See* Am. Compl. Ex. D, § 3.6 (emphasis added)).  The Leases likewise make clear that, even if the parties obtain Replacement Financing, it will only result in a reduction *if* the debt service under the loan is less than the Base Rent. (*See* Mevers Interim Lease, Am. Compl. Ex. A, § 1; Berkely Interim Lease, Am. Compl. Ex. E, §2).

Despite this, BCEA persistently tries to read additional obligations into the agreements—suggesting that Defendants not only agreed to seek out Replacement Financing but guaranteed a result.  BCEA thus begins its response by asserting Defendants have failed to satisfy their "obligations to obtain permanent financing" and "shirked" their "obligation to timely bring about financing that reduces the monthly rental payments under the Interim Leases." (Pl's. Resp. at 1). It then cites allegations in the Amended Complaint that take similar liberties with the contractual

language. (Pl's. Resp. at 6). But the law does not permit Plaintiffs to use bare allegations to alter the terms of a binding contract. Instead, the terms of the contract control. *See Goines v. Valley Community Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails."); *see also Brave Mar. Corp., Inc. v. Glob. Mktg. Sys., Inc.,* 661 F. App'x 249, 251 (4th Cir. 2016) (same).

Faced with the discrepancy between its allegations and the contractual language, BCEA suggests that Defendants' promise to use their "best efforts" to obtain Replacement Financing somehow means they guaranteed a lender would offer financing on terms BCEA found acceptable. BCEA thus devotes the bulk of its brief to cases that seek to define "best efforts" clauses in contracts.

Yet, none of the cases BCEA cites were decided under South Carolina law, and those it does cite cut against its position. The court in *National Data Payment Systems, Inc. v. Meridian Bank*, 212 F.3d 849 (3d. Cir. 2000), upheld the dismissal of the plaintiff's claims. In an opinion authored by now-Justice Alito, the Third Circuit reasoned that, even if plaintiffs could show the defendant violated a provision requiring it to use its "best efforts" to close the sale of its credit card business, plaintiff could not show it was able to complete the closing by the date required in the contract. The Fourth Circuit's unpublished decision in *PRC Realty Sys., Inc. v. Nat'l Ass'n of Realtors*, 972 F.2d 341(Table) (4th Cir. 1992), does not help BCEA either. That case was decided under Colorado law and thus is not controlling here. Even still, the court made clear that a party who promises its "best efforts" does not guarantee it will achieve the plaintiff's desired outcome. In doing so, the court upheld the following jury instruction:

> *A "best efforts" obligation does not require [the promisor] to accomplish a given objective* . . . it requires [the promisor] to make a diligent, reasonable, and good faith effort to accomplish that objective. The obligation *takes into account unanticipated events*

>  *and exigencies of continuing business*, and does not require such events or exigencies be overcome at all costs. It requires only that . . . all reasonable efforts within a reasonable time to overcome any hurdles and accomplish the objective [be made].

*PRC Realty Sys., Inc. v. Nat'l Ass'n of Realtors*, 972 F.2d 341 (Table), at 7 (4th Cir. 1992) (quoting *United Telecomm. v. American Tel. & Comm. Corp.*, 536 F.2d 1310, 1319 n. 7 (10th Cir. 1976)) (emphasis added). Remarkably, BCEA only cites the last clause of this instruction in its response. In doing so, it ignores the point—that a promise to use one's "best efforts" does not guarantee a particular outcome.

Ultimately, however, the BCEA's focus on the phrase "best efforts" is a red herring. BCEA concedes in both the Amended Complaint and its response that Defendants secured proposals for Replacement Financing that would have resulted in reduced rents. (*See* Am. Compl. ¶¶ 28, 29 (reciting that Defendants brought it a proposal for tax-exempt bond issuances to finance Mevers and Berkley that provided for recalculated rents); *see also* Pl's. Resp. at 4).[3] But BCEA rejected those proposals for reasons it chooses not to disclose at this juncture. Instead, it relies on the conclusory statement that Defendants' proposals did not "compl[y] with the terms of the Agreements." (Pl's. Resp. at 6). The agreements, however, do not require Defendants to secure financing proposals that meet any specific set of criteria.

BCEA's decision not to plead any facts about the financing proposals Defendants secured leaves the Court with no way to assess whether BCEA has, in fact, stated a claim. As the Supreme Court has explained, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

---

[3]     Although BCEA only describes one proposal in its response, Defendants actually brought numerous proposals that would have resulted in a reduction of its rent. BCEA, however, has conspicuously chosen not to plead any facts regarding those other proposals in its Amended Complaint.

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8 requires "more than a sheer possibility that a defendant has acted unlawfully"); *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019) (same; dismissing contract claims). But that is all BCEA gives here—repeating *ad nauseum* the conclusory statements that Defendants have "failed to use their best efforts" or "insisted on terms that breach the Agreements." Conclusions, however, are not facts, no matter how many times a plaintiff repeats them.

All told, BCEA has not pleaded sufficient facts to show that Defendants breached any obligation actually imposed by the underlying agreements.[4] Instead, all it has alleged is that Defendants complied with the agreements by brining financing proposals that would have resulted in a reduction of a rent, but that BCEA rejected them for undisclosed reasons. That is not enough to raise BCEA's claim above speculative level. Accordingly, BCEA's breach of contract claim must be dismissed.

---

[4] In its response, BCEA concedes that, under South Carolina law, it cannot sustain a standalone claim for breach of the implied covenant of good faith and fair dealing. (Pl's. Resp. at 7); *see also RoTec Servs., Inc. v. Encompass Servs., Inc.,* 359 S.C. 467, 597 S.E.2d 881, 884 (2004) (holding there is no independent cause of action under South Carolina law for violation of the implied covenant of good faith and fair dealing). BCEA also asserts that the obligation of "good faith" is akin to, but ultimately "less exacting than 'best efforts.'" (Pl's. Resp. at 4, n. 2). Accordingly, any claim BCEA asserts under the implied covenants rises and falls with its breach of contract claim, which must be dismissed for the reasons stated above. *See Palmetto Assisted Living Sys., Inc.*, 2019 WL 1865351, at *3 ("As there is no breach of contract, there can be no action for breach of the implied covenant of good faith and fair dealing."); *see also TRB Mellichamp LLC v. Concrete Supply Co., LLC,* No. CV 2:20-4413-RMG, 2021 WL 6206582, at *3 (D.S.C. Mar. 5, 2021) (noting that "[c]ourts applying South Carolina law regularly dismiss a breach of implied covenant claim where there is no breach of contract claim into which it can be subsumed");

II.     **BCEA HAS NOT STATED A CLAIM FOR "SPECIFIC PERFORMANCE."**

BCEA's claim for "specific performance" rises and falls with its breach of contract claim and accordingly must be dismissed for the same reasons. BCEA cannot maintain a claim for specific performance without first showing a breach of the underlying contract.

As Defendants explained in their opening brief, BCEA's specific performance claim also fails for the independent reason that it seeks to enforce obligations that are not found anywhere in the underlying agreements. "Courts have no authority to alter contracts or make new contracts for the parties. 'They can only require parties to contracts to specifically perform such contracts as they themselves make.'" *Amick v. Hagler,* 286 S.C. 481, 485, 334 S.E.2d 525, 527 (Ct. App. 1985) (quoting *White v. Felkel*, 222 S.C. 313, 324, 72 S.E.2d 531, 536 (1952)) (internal citation omitted)) (holding trial court erred by ordering defendant to provide "owner financing" for project when the parties did not contract for it).

BCEA's specific performance claim seeks "an Order requiring Red Apple to fulfill its obligation(s) under the Agreements to refinance or in the alternative, an Order requiring the sale of the buildings comprising the schools' facilities at the agreed upon Cost Basis, respectively." (Am. Compl. ¶ 49). But BCEA cannot cite any provision that would require Defendants to sell the buildings.

In its response, BCEA tries to muddy the water by claiming "things are not so obvious." (Pl's. Resp. at 8). It then, once again, attempts to provide its own gloss on the contracts, claiming that the "Agreements obligated Red Apple to either refinance the loans with the construction of the Schools or sell the buildings to BCEA at an agreed upon cost basis." (*Id.*). But that is not what the agreements say. Instead, as stated above, the agreements only required Defendants to seek financing; they did not guarantee a lender would provide financing on terms BCEA would accept.

They also did not require that Defendants sell BCEA the buildings if a loan never materialized. In its response, BCEA cites Section 5 of the Berkely Development Agreement as the supposed source of that obligation. But the actual language of the contract stated only that: "It is contemplated under the Permanent Financing, transfer of ownership of the Project and Mevers School of Excellence *may* be offered and *may* be included within the structure of the Permanent Financing." (Am. Compl. Ex. D, § 5). The words "may" and "shall," have different meanings. *Kingdomware Techs., Inc. v. United States,* 579 U.S. 162, 171 (2016) (explaining that the word "may," unlike "shall," implies discretion rather than a requirement); *Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.,* 609 F.3d 338, 342 (4th Cir. 2010) (explaining that "'may' typically indicates authorization without obligation" and thus has "a meaning distinct from the word 'shall,'" which "customarily connotes a command"). Defendants never agreed to sell the buildings to BCEA if a lender willing to offer more favorable financing never materialized.

BCEA could have negotiated for a true option to purchase the properties as part of the development agreements. But it did not do so. Instead, the parties agreed to only that potential arrangements for replacement financing "may"—but did not have to—include the sale of the buildings. The Court has no power to require "specific performance" of provisions that do not exist in the contract. BCEA's claim for "specific performance" accordingly should be dismissed.

### III.    BCEA HAS FAILED TO ALLEGE A CLAIM FOR UNFAIR TRADE PRACTICES.

Finally, BCEA fails to show it has stated a claim for unfair trade practices. BCEA concedes that its UTPA claim must rest on conduct that is distinct from its claim for breach of contract. (*See* Pl's. Resp. at 10-11); *see also Wilson Grp., Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 426 (D.S.C. 1995) (holding that, even a "deliberate or intentional breach of contract, without more, does not constitute a violation of the UTPA").

But BCEA does not point to any such conduct. Instead, it rests its unfair trade practice claim on the same conduct as its contractual claim—namely that Defendants failed to use their "best efforts" to obtain a financing proposal in "good faith" that supposedly complies with the terms of the agreements. (Pl's. Resp. at 10).

In its response, BCEA points to Hamilin Capital Advisors, claiming that its conduct might support a UTPA claim. But BCEA fails to explain how the conduct of a third-party somehow gives rise to a claim against Defendants. Similarly, BCEA does not allege any damage as a result of Hamlin's supposed failure to disclose relationships between its various affiliated entities, since BCEA does not allege that it ever acted in reliance or suffered any damage as a result.

BCEA also argues that it has alleged damages that are distinct from its contractual claim because it has alleged Defendants actions resulted in it "being deprived of its property interest in the Schools themselves." (Pl's. Resp. at 11). In doing so, however, BCEA meets itself coming and going. BCEA has no rights in the facilities other than those set forth in the Leases—which have continued in place. Moreover, BCEA's "specific performance" claim rests on the (false) notion that the agreements grant it a right to purchase the property if a lender does not extend financing on acceptable terms. BCEA thus cannot point to any damages that are distinct from those sought as part of its claim for breach of contract.

**CONCLUSION**

For each of the foregoing reasons, as well as those set forth in Defendants' initial Motion, Plaintiffs' claims asserted in the Amended Complaint should each be dismissed, with prejudice.

WOMBLE BOND DICKINSON (US) LLP

*s/ Molly M. McDermid*
Matthew F. Tilley, admitted *pro hac vice*
301 S. College Street; Suite 3500
Charlotte, NC 28202
matthew.tilley@wbd-us.com

M. Todd Carroll, Fed. ID No. 9742
1221 Main Street, Suite 1600
Columbia, SC 29201
(803) 454-7730
Todd.carroll@wbd-us.com

Molly McDermid, Fed ID No. 13459
5 Exchange Street
P.O. Box 999
Charleston, SC 29402
Molly.mcdermid@wbd-us.com

*Attorneys for Defendants*